Joseph N. HANCOCK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 47A01–0102–CR–63.

Court of Appeals of Indiana.

Nov. 29, 2001.

---

⌀⇀148

David J. Colman, Elizabeth Ann Cure, Bloomington, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Joseph Hancock ("Hancock") was convicted of Rape and Criminal Deviate Conduct, both Class A felonies. He was sentenced to consecutive terms of fifty years for both the Rape charge and the Criminal Deviate Conduct charge, less credit time given for the 437 days actually served while awaiting trial and sentencing. In this appeal Hancock raises four issues, which we restate as follows:

I. Whether the trial court properly granted the State's Motion to Amend the Charging Information;

II. Whether there was sufficient evidence to support Hancock's convictions for Rape and Criminal Deviate Conduct;

III. Whether his dual convictions for Rape and Criminal Deviate Conduct violate the Indiana Double Jeopardy Clause; and

IV. Whether the trial court properly used aggravating and mitigating circumstances to enhance Hancock's sentence.

We affirm.

### Facts and Procedural History

The evidence most favorable to the verdict reveals that on August 10, 1999, Hancock met the victim, T.J., as she was riding her bicycle to work. Hancock stopped T.J. and asked her if she wanted to go out to eat with him and his girlfriend, Jessica Gotwals ("Gotwals"), later that evening. T.J. agreed and met Hancock and Gotwals

at approximately 7:30 p.m. at the house of Hancock's friend. T.J., Hancock, Gotwals, and Gotwals' two small children went out for pizza and then proceeded to Hancock's house in Mitchell, Indiana, arriving at approximately 9:00 p.m. Once arriving at Hancock's house, Gotwals put her children to bed, and T.J. and Gotwals began talking. While T.J. and Gotwals were talking, Hancock gave T.J. a potato chip with some ham salad on it, which, according to T.J. "tasted bitter" and made her feel "sick to her stomach." R. at 562. According to Gotwals, Hancock told her that he put eight blue Xanax ("Alprazolam")[1] tablets in the ham salad he gave to T.J. R. at 635. T.J. soon began nodding her head and acting very tired. Hancock lifted T.J.'s shirt and starting touching her breasts. The testimony revealed that Hancock then proceeded to engage in oral sex with T.J. Hancock next engaged in sexual intercourse with T.J., and then induced T.J. to perform oral sex on him. T.J. did not consent to any of this sexual activity.

While Hancock was engaging in sexual intercourse with T.J., Gotwals left Hancock's house to make arrangements for transportation to leave. Upon returning, Gotwals asked T.J. if she wanted to go home, and after T.J. responded affirmatively, Gotwals helped T.J. out to the car. Concerned that T.J. had "O.D.'d or something," Gotwals drove T.J. to the hospital. R. at 645. After both T.J. and Gotwals informed hospital staff and police about the incident with Hancock, police arrested Hancock and charged him with three counts of Rape, and five counts of Criminal Deviate Conduct, all Class A felonies.

On February 24, 2000, one week before the eventual jury was selected and sworn,[2]

---

1. The medical name for Xanax.

2. The original venire of jurors was convened on February 24, 2000, however members of

and after conducting a hearing on the matter, the trial court allowed the State to amend Hancock's charging information. On March 3, 2000, the jury returned guilty verdicts on two counts of Rape[3] and two counts of Criminal Deviate Conduct.[4] The jury acquitted Hancock with respect to all Rape and Criminal Deviate Conduct counts alleging use of force[5] and both counts of Criminal Deviate Conduct alleging Hancock's performance of oral sex on T.J.[6] On May 8, 2000 the trial court sentenced Hancock to an aggregate, enhanced sentence of 100 years. Hancock appeals both his conviction and his sentence.

### Discussion and Decision

### I. Amendment of Charging Information

Hancock first contends that the trial court erred by allowing the State to amend the original charging information. In addition to arguing that the amendment was untimely, he argues that the State's amendment effectively altered the Indiana Code, thereby changing the theory of its case and eliminating one of his defenses.

The original charging information[7] reads as follows:

### COUNT I

On or about August 10, 1999, in Lawrence County, State of Indiana, Joseph N. Hancock did knowingly have sexual intercourse with T.J., a person of the opposite sex, when she was so mentally disabled or deficient that consent to sexual intercourse could not be given, and the commission of the offense was facilitated by Joseph N. Hancock's furnishing T.J. Xanax without her knowledge.

. . .

### COUNT IV

On or about August 10, 1999, in Lawrence County, State of Indiana, Joseph N. Hancock did knowingly cause T.J. to perform deviate sexual conduct to wit: Joseph N. Hancock placed his penis in the mouth of T.J. when she (sic) so mentally disabled or deficient that consent to said conduct could not be given, and the commission of the offense was facilitated by Joseph N. Hancock's furnishing T.J. Xanax without her knowledge.

R. at 68–69.

The amended charging information, at issue in this appeal,[8] reads as follows:

---

the panel observed Hancock in shackles and restraints. The trial court, without objection, released the panel and ordered the bailiff to summon a new panel to convene on February 29, 2000. The new jury panel was voir dired on February 29, 2000. R. at 62, 96–99, 103–05.

**3.** Counts I and II.

**4.** Counts IV and V.

**5.** Counts III, VI, and IX.

**6.** Counts VII and VIII. Hancock continually insists that these counts, as well as count IX, involve anal sex. However, the information, the amended information filed February 24, 2000, the amended information filed March 2,

2000, and the final jury instructions read to the jury, clearly indicate that Counts VII, VIII and IX charge Hancock with deviate sexual conduct by placing his mouth to the vagina of T.J., or oral sex, and in no way involve anal sex.

**7.** We note that the following is not the actual original charging information, which was filed on August 17, 1999. However, both Hancock and the State rely on the amended charging information filed February 24, 2000 as the "original" charging information in support of their arguments.

**8.** The charging information was first amended on February 22, 2000. However, Hancock did not raise any objection, that we can find, to that amendment.

## COUNT I

On or about August 10, 1999, in Lawrence County, State of Indiana, Joseph N. Hancock did knowingly have sexual intercourse with T.J., a person of the opposite sex, when she was so mentally disabled or deficient, *by reason of ingesting Xanax,* that consent to sexual intercourse could not be given, and the commission of the offense was facilitated by Joseph N. Hancock's knowing that T .J. had been furnished with Xanax without her knowledge.

. . .

## COUNT IV

On or about August 10, 1999, in Lawrence County, State of Indiana, Joseph N. Hancock did knowingly cause T.J. to perform deviate sexual conduct to wit: Joseph N. Hancock placed his penis in the mouth of T.J. when she (sic) so mentally disabled or deficient, *by reason of ingesting Xanax,* that consent to said conduct could not be given, and the commission of the offense was facilitated by Joseph N. Hancock's knowing that T.J. had been furnished Xanax without her knowledge.

R. at 71–72 (emphasis added).[9]

▇▇ The purpose of the charging information is to ensure that the accused is afforded certain protections, and to apprise him of the nature of the accusation made, so that preparations for mounting a defense can be made. *Tripp v. State,* 729 N.E.2d 1061, 1064 (Ind.Ct.App.2000) (citing *Wine v. State,* 637 N.E.2d 1369, 1375 (Ind.Ct.App.1994) *trans. denied*). Accordingly, the charging information must state with particularity the date and location of the alleged offense as well as set forth the specific name of that offense, a citation to the statutory provision alleged to have been violated, and the elements of the offense charged. Ind.Code § 35-34-1-2 (1998); *Tripp,* 729 N.E.2d at 1064. Although the information must be particular, it is well settled that an information need not contain the exact wording of a statute. *Smith v. State,* 465 N.E.2d 702, 704 (Ind. 1984). Minor variances from the wording of a statute do not make an information defective, so long as the words, construed according to their common usage, do not mislead the accused or do not omit an essential element of the crime. *Id.*

Amendments to the charging information are governed by Indiana Code section 35-34-1-5, which provides in relevant part:

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including: . . .

(b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

(1) thirty (30) days if the defendant is charged with a felony; or

(2) fifteen (15) days if the defendant is charged with one (1) or more misdemeanors;

before the omnibus date. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time

---

9. The charging information was later amended on March 2, 2000 to read, "by reason of ingesting Alprazolam." R. at 100.

before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

Ind.Code § 35–34–1–5 (1998).

 To avail himself of the remedies provided by the statute, Hancock could have requested a continuance as soon as the trial court overruled his objection to the State's amendment. Ind.Code § 35–34–1–5(d) (1998); *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997); *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind.1996). By failing to avail himself of the remedy found in Indiana Code section 35–34–1–5(d), Hancock has waived this issue for appeal. *A.E.B. v. State*, 756 N.E.2d 536 (Ind.Ct.App.2001). According to Hancock, he chose not to follow Indiana Code section 35–34–1–5(d) because he had filed a speedy trial motion, and such action would amount to an election of his rights. Brief of Appellant at 10–11. However, this fact does not negate waiver. Hancock could have requested a continuance and then refiled for a speedy trial contemporaneously with a motion for continuance. *Miller v. State*, 563 N.E.2d 578, 582 (Ind.1990). Hancock chose not to pursue the remedy provided him under the statute and, therefore, he has waived this issue for appeal.

 Waiver notwithstanding, Hancock's argument still fails because Hancock has failed to demonstrate how the State's amendment has prejudiced his substantial rights. Under Indiana Code section 35–34–1–5(c), an amendment to the charging information may occur at any time as long as it "does not prejudice the substantial rights of the defendant." Ind.Code § 35–34–1–5(c) (1998); *Sides v. State*, 693 N.E.2d 1310, 1312 (Ind.1998). These substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge. *Sides*, 693 N.E.2d at 1312. If the amendment does not "affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Id.* at 1313 (citing *Martin v. State*, 537 N.E.2d 491, 494 (Ind. 1989)). Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.*

 To determine if Hancock had a reasonable opportunity to prepare for and defend against the State's amended charges, thereby determining whether Hancock's substantial rights were violated, we must determine whether the State's amendment was one of form or substance. If a defense under the original information would be equally applicable to the information in one form as the other, then the amendment is one of form and not substance. *Haak v. State*, 695 N.E.2d 944, 951 (Ind.1998); *Hart v. State*, 671 N.E.2d 420, 427 (Ind.Ct.App.1996).

 Hancock asserts that the amendment eliminated his defense that T.J. was capable of consenting to sex. Brief of Appellant at 9. We disagree. The evidence demonstrates that Hancock's consent defense was still available to him both before and after the State's amendment. After the State amended the information

to read, "so mentally disabled or deficient, by reason of ingesting Xanax,"[10] Hancock was still free to argue that T.J. was capable of consenting to sex. R. at 71–72. Moreover, the amendment did not change the meaning of the statute or omit any essential element. The amendment merely clarified and narrowed the State's position so as to make the case less confusing to the jury.[11] Thus, the State's amendment was one of form and not substance, and we find no error in the trial court's granting of the State's amendment.

## II. Sufficiency of the Evidence

▇▇▇▇ Hancock also argues that the evidence was insufficient to convict him of Rape and Criminal Deviate Conduct. Our standard of review when considering a claim of sufficiency of the evidence is well settled. We will not reweigh the evidence or assess the credibility of witnesses. *Fields v. State*, 679 N.E.2d 898, 900 (Ind. 1997); *Moore v. State*, 723 N.E.2d 442, 451 (Ind.Ct.App.2000). Only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom, will be considered. *Moore*, 723 N.E.2d at 451 (citing *Weaver v. State*, 702 N.E.2d 750, 752–53 (Ind.Ct.App. 1998)). If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.* We will apply this standard whether the evidence is direct or circumstantial in nature. *Burgess v. State*, 461 N.E.2d 1094, 1098 (Ind.1984).

To successfully prosecute Hancock for Rape as a Class B felony, the State was required to prove beyond a reasonable doubt that Hancock, knowingly or intentionally had sexual intercourse with T.J. when: (1) T.J. was compelled by force or imminent threat of force; (2) T.J. was unaware that the sexual intercourse was occurring; or (3) T.J. was so mentally disabled or deficient that consent to sexual intercourse could not be given. Ind.Code § 35–42–4–1 (1998). In order to elevate Hancock's conduct to a Class A felony, the State was also required to prove the additional element that Hancock either facilitated the offense by furnishing the victim, without the victim's knowledge, a drug or a controlled substance or knew that the victim was furnished with the drug or controlled substance without the victim's knowledge. Ind.Code § 35–42–4–1(b)(4) (1998).

To secure a conviction for Criminal Deviate Conduct as a Class B felony, the State was required to prove beyond a reasonable doubt that Hancock, knowingly or intentionally caused T.J. to perform or submit to deviate sexual conduct when: (1) T.J. was compelled by force or imminent threat of force; (2) T.J. was unaware that the conduct was occurring; or (3) T.J. was so mentally disabled or deficient that consent to the conduct could not be given.

10. Later further amended to read "by reason of ingesting Alprazolam," which is the medical name for the drug involved.

11. There is some indication from the record that T.J. may have had a mental infirmity, independent of the mental state created by the ingestion of Alprazolam. The State did not want to make that mental infirmity part of the case stating:

> The State's position is that this victim was mentally disabled on August 10, 1999, and she was so disabled by the defendant providing her with Alprazolam, and that is what caused her mental disability, and I have not and I will not argue today that she would have been disabled on other days. That's been our position, that's the way it's been charged, and I think it's proper.

R. at 1121. We believe this narrowing of the issues surrounding T.J.'s capacity to consent was entirely appropriate.

Ind.Code § 35–42–4–2 (1998). In order to elevate Hancock's conduct to a Class A felony, the State was also required to prove the additional element that Hancock facilitated the offense by furnishing the victim, without the victim's knowledge, a drug or a controlled substance or knew that the victim was furnished with the drug or controlled substance without the victim's knowledge. Ind.Code § 35–42–4–2(b)(4) (1998).

■ The record indicates that the State presented sufficient evidence to meet its burden of proof. Gotwals testified that Hancock told her that he put eight Alprazolam pills in T.J.'s ham salad. R. at 635. Gotwals also testified that she witnessed the sexual intercourse and fellatio between Hancock and T.J., that T.J. was acting very tired, and was, at one point, not moving on her own. R. at 601–02, 606, 643–44. Gotwals further testified that T.J. told Hancock that she did not want to have sex with him and that she wanted to go home. R. at 606. T.J. testified that although she did not remember taking Alprazolam the evening of August 10, 1999, she did remember Hancock giving her a potato chip with ham salad on it that tasted bitter and made her feel sick to her stomach. R. at 562, 564. Standing alone, Gotwals' and T.J.'s testimony was enough to satisfy the State's burden of proof and to support the jury's verdict.

To further establish that T.J. had received an effective dose of Alprazolam, Dr. Evans, the State's expert witness, testified that T.J.'s blood, which was tested and found to have twenty-four nanograms of Alprazolam per milliliter of blood (24 ng/ml) at 4:55 a.m., contained an effective dose of the drug which was higher than the therapeutic dose, and that anyone with a blood concentration that high would feel a "substantial effect" from the drug. R. at 786–87, 792–93. Although the combined

testimony of the witnesses, including that of Dr. Evans, was arguably conflicting at times, the jury had the discretion to believe whom they chose. *Lisenby v. State*, 493 N.E.2d 780, 782 (Ind.1986) (citing *Estep v. State*, 486 N.E.2d 492, 494 (Ind. 1985)). This expert evidence was likewise sufficient to support Hancock's conviction for the Class A felonies of Rape and Criminal Deviate Conduct.

### III. Double Jeopardy

■ Hancock argues next that his dual convictions for Rape and Criminal Deviate Conduct violate the Indiana Double Jeopardy clause. Article I, Section 14, of the Indiana constitution provides in relevant part: "No person shall be put in jeopardy twice for the same offense." Ind. Const. Art. 1, § 14. The double jeopardy clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). To this end, the supreme court articulated a two test analysis, stating:

> [I]n seeking to determine whether two criminal transgressions [are] the same, ... we ... conclude and hold that two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also established the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

*Id.* at 49–50. Accordingly, we must now determine whether Hancock's conviction for Rape and Criminal Deviate Conduct

were the "same offense" in light of these two tests.

### A. *Statutory Elements Test*

■ Under the statutory elements test, the charged offenses are identified by comparing the essential statutory elements of one offense, with the essential statutory elements of the other offense. *Id.* at 50. Once the essential elements of each offense have been identified, we must determine whether the elements of one offense could, hypothetically, be established by evidence that does not also establish the essential elements of the other offense. *Id.* Each offense must contain at least one element that is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses. *Chavez v. State*, 722 N.E.2d 885, 891 (Ind.Ct.App.2000) (quoting *Richardson*, 717 N.E.2d at 52).

■ Hancock was convicted of Rape and Criminal Deviate Conduct, and although these offenses have similar elements, they are separate and distinct for purposes of our analysis under the statutory elements test. As discussed above, Rape is committed when a person knowingly or intentionally has *sexual intercourse* with a member of the opposite sex when the other person is compelled either by force or imminent threat of force, is unaware that the sexual intercourse is occurring, or is so mentally disabled or deficient that consent cannot be given. Ind. Code § 35–42–4–1 (1998) (emphasis added). Criminal Deviate Conduct is committed when a person knowingly or intentionally causes another person to perform or submit to *deviate sexual conduct* when the other person is compelled by force or imminent threat of force, is unaware that the conduct is occurring, or is so mentally disabled or deficient that consent cannot be given. Ind.Code § 35–42–4–2 (1998). Unlike Rape, Criminal Deviate Conduct

does not require sexual intercourse. Rape adds the additional essential element of penetration, which is absent in charges of Criminal Deviate Conduct. *See Tillman v. State*, 274 Ind. 39, 408 N.E.2d 1250, 1251 (1980). Therefore, the same evidence cannot be used to establish both offenses, and under the statutory elements test, there is no double jeopardy violation.

### B. *Actual Evidence Test*

■ Finding no violation under the statutory elements test does not end the inquiry, however, as a possible violation must also be analyzed under the actual evidence test. Under this test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Richardson*, 717 N.E.2d at 53. To show that two challenged offenses constitute the "same offense," a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.*

Hancock argues that there was only one continuous sexual encounter, and that because he never "left and came back or anything else that might create two separate acts," the same evidence was utilized, and only one of the two convictions can stand under *Richardson*. Brief of Appellant at 18. We disagree. Although distinguishing separate crimes often proves to be a difficult task, especially in cases of sexual assault, our supreme court has, on several occasions, affirmed separation of acts, committed in a course of conduct, into distinct crimes, stating:

> We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees

fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts.

*Collins v. State*, 717 N.E.2d 108, 110 (Ind. 1999) (quoting *Brown v. State*, 459 N.E.2d 376, 378 (Ind.1984)).

It is still necessary, however, to analyze each case separately under the actual evidence test to determine whether there has been a double jeopardy violation. Hancock began his sexual assault of T.J. by lifting her shirt and touching her breasts. He then proceeded to perform oral sex on T.J. Several minutes later, Hancock decided to have sexual intercourse with T.J. and penetrated her vaginally with his penis. This action led to Hancock's rape conviction. Hancock then induced T.J. to perform oral sex on him again, leading to a separate act of criminal deviate conduct. Like the court in *Collins* and *Brown*, we find that there is no reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of rape were also used to establish the essential elements of criminal deviate conduct. We, therefore, find no violation of the Indiana Double Jeopardy Clause under the actual evidence test.[12]

## IV. Sentencing

Finally, Hancock asserts that the trial court erred when it used T.J.'s mental infirmity to aggravate his sentence, claiming that the sentencing court may not rely upon a material element of the offense to enhance a sentence. Brief of Appellant at 20 (citing *Stone v. State*, 727 N.E.2d 33, 37 (Ind.Ct.App.2000)). Again, we disagree.

Sentencing decisions are within the discretion of the trial court. *Jones v. State*, 698 N.E.2d 289, 291 (Ind.1998). We will not revise a sentence authorized by statute unless manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B); [13] *Merrill v. State*, 716 N.E.2d 902, 905 (Ind.1999). Our review under Indiana Appellate Rule 17(B) is very deferential to the trial court.

Indiana Code section 35–38–1–7.1 vests the trial court with wide discretion to determine whether the presumptive sentence should be increased or decreased because of aggravating or mitigating factors. Ind.Code § 35–38–1–7.1 (1998); *Harris v. State*, 659 N.E.2d 522, 527 (Ind. 1995). When exercising this discretion, the court must conduct a hearing and include within the record a statement of the court's reasons for selecting the sentence it imposes. Ind.Code § 35–38–1–3 (1998); *Harris*, 659 N.E.2d at 527. The trial court's statement should include an identification of the significant aggravating and mitigating circumstances, specific facts and reasons leading the court to find the existence of such circumstances, and an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Dixon v. State*, 685 N.E.2d 715, 717 (Ind.Ct.App.1997).

---

**12.** Hancock also argues that the elevation of his Rape and Criminal Deviate Conduct charges from Class B felonies to Class A felonies results in a Double Jeopardy violation, because the same evidence to convict him of the charge, the use of Alprazolam, was used to elevate the charge to the higher felony conviction. Again we cannot agree. Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression by filing two separate charges, *Richardson*, 717 N.E.2d at 49, or as noted above, using the same evidence from one charge to convict a defendant of a separate charge. *Richardson* simply isn't applicable under these circumstances.

**13.** *See now* Ind. Appellate Rule 7(B).

The trial court conducted a sentencing hearing and heard arguments regarding Hancock's aggravating and mitigating circumstances. The trial court found aggravating circumstances to include: Hancock's lengthy history of delinquent and criminal activity, his need of correctional treatment best provided at a penal facility, his violation of bond terms in two pending cases by committing this offense, and T.J.'s mental infirmity "absent the use of any controlled substances." R. at 1308. The trial court found no mitigating circumstances, and sentenced Hancock to an aggregate term of 100 years in the Department of Correction, the maximum sentence [14] for Hancock's two Class A felony convictions.[15]

The trial court did not consider T.J.'s ingestion of Alprazolam as an aggravating factor in enhancing Hancock's sentence. Rather, the trial court considered T.J.'s mental infirmity "absent the use of any controlled substances," to be an aggravating circumstance. R. at 1308. This mental infirmity was the same condition that the prosecutor correctly sought to remove from the jury's consideration by amendment of the charges. Hancock's argument that the trial court may not rely upon a material element to enhance his sentence is simply inapplicable to the trial court's sentencing considerations in this case.

In addition, regardless of the trial court's use of T.J.'s mental infirmity for any cause, only one valid aggravating circumstance is required to be found by the trial court in enhancing a presumptive sentence. *Stone v. State*, 727 N.E.2d at 35. Because the trial court identified several valid aggravating circumstances in enhancing Hancock's sentence, any error that may be present in the trial court's use of T.J.'s mental infirmity would be harmless error. *See Catt v. State*, 749 N.E.2d 633 (Ind.Ct.App.2001). Finally, under the egregious facts and circumstances of this case, we cannot find that the trial court's sentence of Hancock was manifestly unreasonable. Ind. Appellate Rule 17(B); *Merrill*, 716 N.E.2d at 905. The trial court's sentence of Hancock was therefore proper.

### Conclusion

For all of these reasons, we find that the trial court properly granted the State's amendment to the charging information, there was sufficient evidence to support Hancock's conviction for both Rape and Criminal Deviate Conduct, Hancock's dual convictions for Rape and Criminal Deviate Conduct do not violate Indiana's Jeopardy Clause, and the trial court properly sentenced Hancock. The conviction and the sentence of the trial court are therefore affirmed.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.

---

14. To avoid double jeopardy concerns, the trial court had previously vacated one of Hancock's Rape convictions and one of Hancock's Criminal Deviate Conduct convictions.

15. *See* Indiana Code section 35–50–2–4, which provides in relevant part:
 A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000).
 Ind.Code § 35–50–2–4 (1998).