**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 31 2013, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN L. REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOVAN FITZHUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1206-CR-255 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D05-1106-FB-133

**January 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, fifteen-year-old, P.H., was babysitting for appellant-defendant Jovan Fitzhugh and his wife, Capricia. Fitzhugh arrived home before Capricia and began rubbing P.H.'s leg while sitting beside her on the couch watching television. Fitzhugh then engaged in sexual intercourse with P.H. Capricia eventually returned and took P.H. home, but P.H. did not tell her about the incident.

P.H. told a friend what had happened, and her friend told her mother who eventually told P.H.'s mother. Fitzhugh was charged and convicted of class B felony Sexual Misconduct with a Minor[1] and class C felony Sexual Misconduct with a Minor.[2]

Fitzhugh now appeals arguing that fundamental error occurred through various statements made by the prosecutor and by the admission of certain evidence. Additionally, Fitzhugh contends that his convictions violate double jeopardy principles.

Concluding that no fundamental error occurred but that Fitzhugh's convictions do violate the continuing crime doctrine, we affirm in part, reverse in part, and remand with instructions to the trial court to vacate Fitzhugh's conviction for class C felony sexual misconduct with a minor.

FACTS

P.H., who was born on November 13, 1994, met Capricia at their Allen County church and began babysitting for the Fitzhugh children. One evening, after P.H. had been babysitting for the Fitzhugh family for approximately six months, P.H. was caring for the

_____

[1] Ind. Code § 35-42-4-9.

[2] Id.

2

Fitzhugh children while Capricia worked. Thirty-three-year-old Fitzhugh had been out bowling but returned before Capricia, and the children went to bed upstairs.

P.H. and Fitzhugh began watching television downstairs while sitting on opposite sides of the couch. Fitzhugh moved closer to P.H. and started rubbing her legs. P.H. asked Fitzhugh what he was doing and pointed out that he was married, but Fitzhugh continued to rub her leg. Eventually, Fitzhugh climbed on top of P.H., placed his forearm across her chest, took off her sweat pants, and threw them across the room. P.H. continued to ask Fitzhugh what he was doing, but he did not respond. Instead, Fitzhugh pulled down his pants and proceeded to have sexual intercourse with P.H. When Fitzhugh was finished, he pulled on his pants and went upstairs.

P.H. was frightened and went to a neighbor's house to call her mother, but she did not answer the phone. P.H. returned to the Fitzhugh residence, and about thirty minutes later, Capricia arrived to take P.H. home. After returning home, P.H. showered and went to bed.

Several days later, P.H. told her friend, M'Rbrasha Lattimore, about the incident. M'Rbrasha told her mother, Peggy Lattimore, who told P.H.'s mother what had happened. P.H. had written a letter to her mother explaining what had happened, but had not yet given the letter to her mother. P.H. was taken to the police department where she spoke to Detective Kathleen Morales.

Detective Morales retrieved P.H.'s underwear that she had been wearing that night, which remained unwashed. Fitzhugh signed a consent form allowing law

3

enforcement officials to obtain his DNA and a buccal swab from him. Nicole Keeling, a forensic biologist with the Indiana State Police (ISP) tested P.H.'s underwear, and a presumptive test for semen was positive, but a confirmatory test was negative. At trial, Keeling testified that this could mean that it was semen without sperm. Keeling also detected three areas with male DNA on the underwear but could not identify the DNA.

The DNA samples from the unknown source were then sent to Strand Analytical Laboratories, a private company. Stephanie Goldman, a DNA analyst for Strand, examined the DNA and testified that the underwear sample was consistent with Fitzhugh's DNA but observed that it would also be consistent with any of Fitzhugh's male relatives with the same paternal lineage.

On June 23, 2011, the State charged Fitzhugh with class B felony sexual conduct with a minor and class C felony sexual misconduct with a minor. During voir dire, the prosecutor stated that "the sole and uncorroborated testimony of a victim or a witness is sufficient to convict somebody of a criminal offense if you believe that testimony beyond a reasonable doubt." Tr. p. 43. Further, the prosecutor spoke of her responsibilities during the trial, including proving the elements of the case beyond a reasonable doubt and stated that "[i]f I don't do my job then obviously you cannot render a judgment of conviction at the end of this trial." Id. at 35.

The prosecutor also asked the potential jurors if they agreed that a delay in reporting a sex crime did not necessarily mean that the crime did not happen. Additionally, when discussing reasonable doubt, the prosecutor offered an analogy of a

4

child being told not to eat a cookie and the cookie being gone when her mother returns. The prosecutor concluded: "Now you can see kind of a difference, maybe it's not all doubt because you didn't see the crumbs, but there's no reasonable explanation and so you're convinced beyond a reasonable doubt." Tr. p. 51.

During the trial, P.H. testified that Fitzhugh committed the crimes for which he was charged. Likewise, M'Rbrasha, Peggy, P.H.'s mother, and Kanika Carr, P.H.'s friend from church, also testified as to what P.H. had told them regarding the incident, which was substantially consistent with P.H.'s version of events.

During closing argument, the prosecutor repeated that the law in Indiana is that the sole and uncorroborated testimony of a victim alone is sufficient to convict a person of a criminal offense. Tr. p. 291. The prosecutor also commented that there is "no reasonable explanation for his DNA to be in the inside crotch area of [P.H]'s underwear." Id. at 302. The prosecutor further commented that P.H. had told the same story from beginning to end and opined that if she had not, the jury would have heard about it. The prosecutor again reiterated that "[d]elay in disclosure in sex abuse cases for young children, teenagers and even adults is common. In fact, it's the norm to not tell right away." Id. at 298. The prosecutor also opined that if the State refused to prosecute every case in which the alleged victim failed to immediately come forward with the sexual abuse, "[w]e wouldn't prosecute probably 95% of the sexual abuse cases. Delay in disclosure is the norm." Id. at 316.

5

On March 29, 2012, the jury returned a guilty verdict on both counts. On May 11, 2012, the trial court held a sentencing hearing during which it sentenced Fitzhugh to twelve years on the class B felony with ten years executed and two years suspended to probation. The trial court sentenced Fitzhugh to a concurrent four-year executed term on the class C felony for a total executed term of ten years imprisonment. Fitzhugh now appeals.

## DISCUSSION AND DECISION

### I. Fundamental Error

Fitzhugh argues that he was subjected to fundamental error by prosecutorial misconduct and by the admission of evidence. Initially, we observe that Fitzhugh concedes that he relies upon the fundamental error doctrine because "[n]o meritorious objections were made during trial." Appellant's Br. p. 8.

The fundamental error doctrine is extremely narrow. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). To be sure, it "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." McQueen v. State, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

### A. Prosecutorial Misconduct

Fitzhugh claims that fundamental error occurred when the prosecutor:

- Misstated the law during voir dire and closing argument that the sole and uncorroborated testimony of a victim is sufficient to convict.

6

- Commented during voir dire that her job is to prove the elements of the offenses beyond a reasonable doubt and that the jury cannot convict unless she does her job.

- Suggested during voir dire that reasonable doubt required facts to establish a reason to doubt when she analogized a child being told not to eat a cookie, but the cookie was gone when the mother returned.

- Negated the presumption of innocence during closing argument by commenting that P.H. had told the same story from beginning to end and that if her story had changed, the jury would have heard about it.

- Discussed facts not in evidence during voir dire and closing argument by stating that a delay in reporting sexual abuse is common, insofar as no expert witness testified that that a delay in reporting is common.

For prosecutorial misconduct to amount to fundamental error, it must have been so prejudicial to the rights of the defendant as to make a fair trial impossible. Cowan v. State, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003). "A review of the totality of the circumstances and a determination whether the error had a substantial influence upon the outcome are required." Id.

Even assuming solely for argument's sake that the prosecutor's comments rose to the level of misconduct,[3] we cannot say that they amounted to fundamental error such that Fitzhugh was denied a fair trial. Consequently, this argument fails.

---

[3] Indeed, there is much caselaw to support the prosecutor's comments. See Carter v. State, 754 N.E.2d 877, 880 (Ind. 2001) (recognizing the long-standing principle that a victim's "uncorroborated testimony is sufficient to sustain a conviction"); Gilbert v. State, 954 N.E.2d 515, 518 (Ind. Ct. App. 2011) (stating "it is a basic tenet of fundamental due process that . . . the burden is entirely on the State to prove all of the elements of the charged offense beyond a reasonable doubt"); Peters v. State, 959 N.E.2d 347, 355 (Ind. Ct. App. 2011) (stating that a conviction may rest on circumstantial evidence alone); Harrison v. State, 901 N.E.2d 635, 644 (Ind. Ct. App. 2009) (stating that "[i]t is not improper for the prosecutor in closing argument to focus on the uncontradicted nature of the State's case").

7

## B. Admission of Evidence

Fitzhugh also argues that fundamental error resulted from the admission of incompetent hearsay and immaterial evidence. More particularly, Fitzhugh complains about the letter that P.H. wrote to her mother and M'Rbrasha's testimony regarding what P.H. had told her about the incident. Additionally, Fitzhugh complains about Peggy's testimony, stating that although she "did not directly testify as to the content of what her daughter had told her about what [P.H.] had told her . . . from the context of the testimony it was clear that she was relaying that [P.H.] told her that she had been raped." Appellant's Br. p. 14.

Likewise, Fitzhugh argues that P.H.'s mother's testimony regarding the content of Peggy's conversation with her about the incident was impermissible hearsay. Finally, Fitzhugh maintains that Carr's testimony was impermissible hearsay even though he essentially concedes that Carr did not testify to what anyone had told her. Carr simply described finding out that there had been an incident and that she had talked to P.H. about the incident until P.H.'s mother took over. Nevertheless, Fitzhugh seems to argue that because Carr's testimony bolsters the other hearsay testimony, it too, was hearsay.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible except as provided by law or by the rules of evidence. Evid. R. 802.

8

Regarding P.H.'s letter, to the extent that it makes references to Fitzhugh's conduct, it was merely cumulative of her trial testimony. Tr. p. 132-33, 149; Ex. 1. Therefore, even assuming that its admission was erroneous, its admission is not grounds for reversal. See Purvis v. State, 829 N.E.2d 572, 585 (Ind. Ct. App. 2005) (stating that the erroneous admission of evidence is harmless if it is cumulative of other evidence)).

Concerning Fitzhugh's arguments that the admission of statements by M'Rbrasha, Peggy, P.H.'s mother, and Carr was fundamental error because they were impermissible hearsay, most of their testimony described how they had learned that something had happened to P.H. and the steps that they took during this process. Tr. p. 172-84, 184-95. 200-208. Thus, their statements are not hearsay because they fail to meet the definition. See Evid. R. 801(c) (defining "Hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Put another way, their testimony did not concern any specific statements that were made to them regarding what had happened to P.H. Rather, their testimony was that they had heard that something had happened to P.H. and the steps they took after learning that information. These witnesses were telling their story so that their testimony and the events following the incident, including the reporting of the crime, were convincing to the jury.

It is the case that M'Rbrasha testified that P.H. told her that she had been raped. Tr. p. 162. However, to the extent that this was error, it was harmless, insofar as it was cumulative of P.H.'s trial testimony. See Montgomery v. State, 694 N.E.2d 1137, 1140

9

(Ind. 1998) (stating that the admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other properly admitted evidence).

Next, Fitzhugh argues that the admission of DNA evidence was fundamental error. Specifically, Fitzhugh contends that the testimony of forensic scientist, Stephanie Goldman, was confusing and misleading.

Goldman testified that the "Y chromosome from your father gets passed down exactly the same to the child. So everybody in the same paternal lineage would have the same Y chromosome." Tr. p. 259. Goldman concluded that that "the sample from the underwear and Mr. Jovan Fitzhugh's sample is consistent with him and any of his male relatives to a reasonable degree of scientific certainty. . . ." Id. Goldman did not testify regarding the statistical relationship between this match and all other males sharing Fitzhugh's paternal lineage.

DNA evidence is admissible when the DNA analysis indicates a defendant's profile is consistent with DNA found at the crime scene because, under these circumstances, the evidence has a high probative value. Deloney v. State, 938 N.E.2d 724, 729 (Ind. Ct. App. 2010). Conversely, DNA evidence is inadmissible if it leaves open a "possibly infinite number of people" without some statistical probability of a match. Id. (emphasis omitted).

In Deloney, a DNA expert testified that Deloney could neither be included nor excluded as one of the people at the crime scene based on the admitted DNA evidence, and this Court concluded that the trial court erred by admitting DNA evidence that did

10

not make the existence of a fact more or less probable. Id. at 729-30. Here, instead of leaving open the possibility of an infinite number of contributors, the DNA testing limited the potential matches to Fitzhugh's male relatives with the same paternal lineage. Tr. p. 244, 250, 259, 262. Thus, Goldman's testimony could assist the jury and make the existence of fact, namely, whether Fitzhugh, had engaged in sexual conduct with P.H. more or less probable. Consequently, Goldman's conclusion that the DNA evidence was consistent with Fitzhugh's DNA as well as any male sharing Fitzhugh's paternal lineage goes to the weight of the testimony rather than to its admissibility. See Rowan v. State, 431 N.E.2d 805, 816 (Ind. 1982) (concluding that any alleged lack of reliability can be exposed during cross-examination and, therefore, goes to the weight of the evidence rather than to its admissibility).

In a related argument, Fitzhugh objects to the prosecutor stating that seminal material was found in P.H.'s underwear. A presumptive test for seminal fluid returned positive. And while the confirmatory test indicated that the substance did not contain sperm, it did not disprove that the material in P.H.'s underwear was semen. Tr. p. 233-34. As was explained to the jury, this could have been due to a vasectomy, low sperm count, or other factors. Id.

Regarding Fitzhugh's alternate theories about how his DNA was found in P.H.'s underwear, these are merely alternate theories that the jury was not obliged to accept. See Luckhart v. State, 736 N.E.2d 227, 231 (Ind. 2000) (holding that Luckhart's alternate

11

theory constituted a reweighing of the evidence and reassessing of witness credibility and not subject to review on appeal).

Even assuming solely for argument's sake there was error in the admission of this evidence, such admission did not rise to the level of fundamental error such that Fitzhugh was denied a fair trial. Moreover, P.H. testified that Fitzhugh rubbed her leg and then engaged in sexual intercourse with her. Consequently, the evidence complained of is merely cumulative and, at most, harmless error. Spaulding v. Harris, 914 N.E.2d 820, 830 (Ind. Ct. App. 2009).

## II. Double Jeopardy/Continuing Crime Doctrine

Fitzhugh contends that his two convictions for sexual misconduct with a minor violate the Double Jeopardy Clause of the Indiana Constitution, which provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. The State frames the issue differently but concedes that "Fitzhugh's two convictions for sexual misconduct with a minor violate the continuing crime doctrine." Appellee's Br. p. 17.

The continuing crime doctrine provides that "actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." Buchanan v. State, 913 N.E.2d 712, 720 (Ind. Ct. App. 2009). The continuing crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes. Riehle v. State, 823 N.E.2d 287, 296 (Ind. Ct. App.

12

2005). Instead, the doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime. Id.

Here, as discussed above, P.H. and Fitzhugh were watching television on the same couch when Fitzhugh started rubbing P.H.'s leg and then engaged in sexual intercourse with her. Tr. p. 129-33. Fitzhugh was charged with two counts of sexual misconduct with a minor, one for engaging in sexual intercourse and the other for fondling P.H.'s leg. Appellant's App. p. 13-16. Under these circumstances, we cannot say that Fitzhugh's conduct was not part of the same continuous transaction. Consequently, we remand with instructions to the trial court to vacate Fitzhugh's conviction for class C felony sexual misconduct with a minor.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and BARNES, J., concur.