## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 24 2015, 10:02 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Henry Gibson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 24, 2015

Court of Appeals Cause No. 49A05-1502-CR-70

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Cause No. 49G06-1408-F3-40935

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Henry Gibson (Gibson), appeals his sentence for Count I, aggravated battery, a Level 3 felony, Ind. Code § 35-42-2-1.5(2); Count II, battery by means of a deadly weapon, a Level 5 felony, I.C. § 35-42-2-1(b)(1); and Count III, carrying a handgun without a license, a Class A misdemeanor, I.C. § 35-47-2-1.

We affirm.

## ISSUE

Gibson raises one issue on appeal, which we restate as: Whether the trial court abused its discretion by failing to specifically identify and balance the aggravating and mitigating circumstances.

## FACTS AND PROCEDURAL HISTORY

Gibson lived in the house next to Tabitha Parr (Parr) for about two years in Marion County, Indianapolis, Indiana. At the time, Parr was renting out her vehicle on a daily basis to Gibson's friend, Derrick Hart (Hart). On more than one occasion, Parr had requested Hart to return her vehicle and when Hart did not concede to her requests, Parr's girlfriend contacted the police and reported the vehicle stolen. On August 21, 2014, using Parr's vehicle, Hart dropped his girlfriend off at work and then drove and parked the vehicle outside an apartment building located on Michigan and Lasalle to hang out with his

friends. At around 2:00 p.m., Hart saw a police vehicle stop by Parr's vehicle and the officer informed Hart that the vehicle had been reported stolen. Parr's vehicle was then impounded and towed. Because he had paid to use the vehicle that day, Hart texted Parr questioning her about the vehicle. In a phone conversation, Hart demanded a refund on his money and also made several threats. After work, instead of going home, Parr drove to her longtime friends' house—Larry Tindle (Tindle) and John Carr (Carr)—who lived on 3741 East Market Street, Marion County, Indianapolis, Indiana. During that time, Hart was dating Carr's daughter, and he lived at Tindle's and Carr's house. Parr had hoped that Carr would calm Hart down. At some point, Parr texted Hart and informed him that she was at Tindle's and Carr's house.

[5] When Hart arrived, Carr answered the door. According to Carr, Hart yelled at Parr that he was "going to kill her" and was going to "beat the crap out of [Parr] if she didn't come out [] and fight like a man." (Transcript p. 76). Carr defended Parr by informing Hart that he was not going to harm Parr, and he requested Hart to leave. Thereafter, Hart returned to Gibson's house and narrated the vehicle situation to Gibson. Gibson was upset to hear what had transpired, and so he asked Hart to show him where Parr was. When Gibson and Hart arrived at Tindle's and Carr's house, both walked to the front steps and drew their guns. Since Parr needed a ride home, Carr offered to drive her. The moment Carr and Parr opened the front door, Hart and Gibson started shooting. Carr blocked the shots with his right arm and two bullets hit Carr's right elbow. Parr ran back inside the house and Carr closed the door.

Approximately six more bullets flew through the closed door, and one of them hit Carr in the buttocks. Gibson and Hart took off running down the street. On their way home, Gibson discarded his handgun in a field.

[6] Carr was taken to the hospital and was admitted for about four days. Carr's elbow was shattered and had to be replaced. The bullet that hit Carr's buttocks was fused in his femoral artery and could not be removed from his body. As a result of the shooting, Carr continued to feel numbness and pain in his leg, as well as pain in his elbow. Carr also had to use a cane for walking.

[7] On August 27, 2014, the State filed an Information, charging Gibson with Count I, aggravated battery, a Level 3 felony; Count II, battery by means of a deadly weapon, a Level 5 felony; Count III, carrying a handgun without a license, a Class A misdemeanor; and Part II of Count III, carrying a handgun without a license, a Level 5 felony. A two-day joint jury trial for Gibson and Hart was held on January 13-14, 2015.[1] At the close of the evidence, the jury found Gibson guilty as charged. The State subsequently dismissed Part II of Count III, carrying a handgun without a license. On January 29, 2015, the trial court held a joint sentencing hearing for Gibson and Hart. At the close of the

---

[1] Hart appeals separately and is not a party to this appeal.

evidence, the trial court merged Count II into Count I, and it thereafter sentenced Gibson to fifteen years in the Department of Correction (DOC). As for Count III, the trial court sentenced Gibson to one year. Gibson's sentences were to run concurrently.

[8] Gibson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION[2]

[9] Gibson contends that the trial court abused its discretion by failing to expressly identify and balance the aggravating and mitigating circumstances. "A trial court's sentencing determination is within its discretion, and we will reverse only for an abuse of that discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g by* 875 N.E.2d 218 (Ind. 2007). When sentencing a defendant for a felony, the trial court must enter a sentencing statement "including reasonably detailed reasons or circumstances for imposing a particular sentence." *Id*. Even if the trial court has abused its discretion—by, for example, neglecting to enter a sentencing statement—we will remand for

---

[2] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Gibson's claims on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*. at 491.

[10] We initially note that the trial court's failure to use the word "aggravator" is not fatal to its sentencing statement. *Lewis v. State*, 31 N.E.3d 539, 543 n.7 (Ind. Ct. App. 2015). At Gibson's sentencing, without specifically proclaiming that the following were aggravators, the trial court noted in its oral sentencing statement the nature of Gibson's crimes, Carr's injuries, Gibson's extensive criminal history, and his addiction to drugs.

[11] Generally, the "nature and circumstances" of a crime is a proper aggravating circumstance. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001) (quoting *Thacker v. State*, 709 N.E.2d 3, 10 (Ind. 1999)). Even if the trial court did not state that Gibson's crimes were aggravating factors, the trial court's sentencing statement was focused on pointing out the nature of the attack on Carr and the risk of injury that would have resulted from the shooting. Specifically, the trial court stated,

> I am just absolutely staggered by the ability of anybody to fire just indiscriminately into a house in which you know there [were] individuals inside. You know, you're not firing up in the air. You're not firing [] into the ground to make a point. You're actually firing to the point where the bullets go through the door and could have hit anybody that had moved, and you knew people that were there.
>
> ****
> [Somebody []] could have been hit by those bullets that weren't (sic) part of your argument, or weren't (sic) part of your beef. And you

didn't really care. You just shot it up because you could.

****

But you can't ignore six bullet holes through a door, and you can't ignore it in somebody's body. [] And no matter what your argument was, it wasn't worth that. So, my suggestion to you is you stay away from the drugs or anything else going [] in the [DOC]. You go out and you get yourself some kind of degree. Either in certification in terms of doing something where you're worthwhile and then we can talk about community corrections. But there's no way I'm putting you in community corrections or giving you anything less than pretty close to the maximum [], because I think shooting through a house with multiple people inside for fifteen years is frankly nothing by comparison.

(Sent. Tr. pp. 33-34, 54).

[12] Further, we note that the serious nature of a victim's injuries is a proper aggravator. *See McCann*, 749 N.E.2d at 1120. In the instant case, the trial court noted that Carr was still carrying a bullet inside his body, and that Gibson was lucky that the bullet had not severed the artery. In addition, the record shows that Carr's elbow was shattered from the shooting and had to be replaced.

[13] With respect to Gibson's criminal history, we have held that a defendant's criminal history is a valid aggravating circumstance. *See Deloney v. State*, 938 N.E.2d 724, 732 (Ind. Ct. App. 2010), *trans. denied*. In the instant case, the trial court noted Gibson had not led a law-abiding life leading up to the immediate offenses. Gibson's juvenile history included seven true findings, including two batteries, truancy, intimidation, public intoxication, and criminal recklessness. With regards to Gibson's adult criminal history, the trial court observed that Gibson had five felony convictions. Furthermore, the record shows that in

2007, Gibson violated his probation for failing to report his accurate address, attend counselling, or obtain employment. In 2008, Gibson was convicted and sentenced to four years in the DOC for multiple charges, including armed robbery, criminal confinement, intimidation, pointing a firearm, and resisting arrest. Gibson was placed on probation for six months which he violated in 2011, and was therefore sentenced to one year in the DOC. Again, in 2013, Gibson violated his probation by contacting victims of a domestic battery case. Here, we conclude the trial court properly relied on Gibson's criminal history as an aggravating factor.

[14] Lastly, we note that a history of substance abuse may constitute a valid aggravating factor. *See Iddings v. State*, 772 N.E.2d 1006, 1018 (Ind. Ct. App. 2002), *trans. denied*. In this case, the trial court noted that Gibson started using drugs at the age of fourteen and he would use "two blunts a day." (Sent. Tr. p. 46).

[15] Gibson also contends that the trial court abused its discretion when it failed to identify as mitigating that both of his parents had arrest records. Also, Gibson argues that the trial court failed to consider that his incarceration would have posed hardship to his "two children, ages eight and nine." (Appellant's Br. p. 7). It is well established that the determination of mitigating circumstances is within the trial court's discretion. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a

defendant. *Id.* A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. *Id.* An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. *Id.*

[16] With respect to Gibson's first proffered mitigator, the fact his parents were arrested was documented in the PSI. The trial court did not recognize that circumstance at Gibson's sentencing hearing, but acknowledged that Gibson had a poor upbringing. Here, we find that it was within the trial court's discretion to determine if Gibson's parents' arrest records was a separate mitigating circumstance warranting a reduced sentence. *See Anglemyer*, 868 N.E.2d at 493 (stating that it "is the court's call" to determine whether a proposed mitigating circumstance is significant). Turning to Gibson's second proffered mitigating factor, the record shows that although Gibson had a relationship with his children, he had failed to pay child support in an amount close to $5,000. Moreover, Gibson had been incarcerated numerous times since his children were born, and his imprisonment would not have caused an undue burden to his children. As such, the trial court properly refused to recognize Gibson's second proffered mitigator.

[17] Finally, with respect to Gibson's argument that the trial court failed to properly balance the mitigating and aggravating circumstances, our Indiana Supreme Court has instructed that our review of sentencing for an abuse of discretion does not include a review of the relative weight or value assigned to mitigating

and aggravating factors. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Here, we find that Gibson's argument is not available for appellate review because he is merely challenging the weight that the trial court assigned to the factors.

[18] With all of the above in mind, we conclude that the trial court did not abuse its discretion when sentencing Gibson. Here, the trial court properly demonstrated that the aggravating and mitigating circumstances were weighed to determine that the aggravators outweighed the mitigators. Therefore, we find that the trial court properly sentenced Gibson.

## CONCLUSION

[19] Based on the foregoing, we conclude that trial court did not abuse its discretion by failing to expressly identify and balance the aggravating and mitigating circumstances.

[20] Affirmed.

[21] Brown, J. and Altice, J. concur