## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2015, 9:46 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

Jason E. Morales
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason E. Morales, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | February 4, 2015 <br><br> Court of Appeals Cause No. 82A01-1405-PC-206 <br><br> Appeal from the Vanderburgh Circuit Court. <br> The Honorable David D. Kiely, Judge. <br> The Honorable Kelli E. Fink, Magistrate. <br> Cause No. 82C01-1208-PC-18 |

**Darden, Senior Judge**

## Statement of the Case

[1]     Jason E. Morales appeals from the post-conviction court's order denying his

petition for post-conviction relief from his convictions of two counts of sexual

misconduct with a minor, each as a Class B felony.[1]  Morales contends that the post-conviction court erred by concluding that he could not challenge on Equal Protection Clause grounds the constitutionality of Indiana Code section 35-42-4-9 (2007), and that he had failed to establish his claims alleging ineffective assistance of trial counsel.  We affirm.

## Facts and Procedural History

The facts and procedural history supporting Morales' convictions were set out as follows in our memorandum opinion deciding Morales' direct appeal:

> On February 8, 2009, fourteen-year-old V.R. spent the night with her cousin Kristen Fifer at the home Fifer shared with her fiancé, Morales. Despite knowing that V.R. was only fourteen years old, Morales prepared alcoholic drinks for V.R. and Fifer.  V.R. and Fifer drank these drinks while watching a movie and "playing on the computer." Tr. p. 194.  After the movie was over, Fifer went to bed and V.R. continued "playing on the computer."  Tr. p. 199.  At some point, V.R. dropped a glass of water that she was drinking.  Morales knelt down next to V.R. and helped clean up the broken glass.  While cleaning up the broken glass, Morales "leaned in to kiss" V.R.  Tr. p. 199.  Morales "kept trying to kiss" V.R. despite her telling him that she "didn't want to kiss him."  Tr. p. 200.

> Morales asked V.R. to help him put clean sheets on the bed in the spare bedroom in which V.R. was going to sleep.  While in the spare bedroom, Morales "laid [V.R.] on the bed and started kissing [her] again."  Tr. p. 201.  V.R. subsequently testified that Morales stuck "his tongue in [her] mouth while kissing her."  Tr. p. 202.  At some point, Morales also put his hand down V.R.'s pants, under her underwear, and "stuck his finger in [V.R.'s] vagina."  Tr. p. 203.  Throughout this

---

[1] Ind. Code §35-42-4-9 (2007).

encounter, V.R. repeatedly told Morales, "I don't want to do this and this is wrong, stop." Tr. pp. 203-04.

Morales took V.R. to work with him and then to a gas station in Kentucky to buy cigarettes. Upon returning home, Morales helped V.R. back into the spare bedroom where he "laid [her] down . . . took [her] pants off and then pulled [her] underwear down and lifted [her] shirt up." Tr. p. 206. Morales "put his hands under [V.R.'s] bra," "touched [her] boobs," and "tried to have sex with [her]." Tr. p. 206. After Morales was not able to successfully complete sexual intercourse with V.R., he "took his clothes off and . . . [told V.R.] to put [her] mouth on his penis and suck it." Tr. p. 206. Morales "started pushing [V.R.'s] head towards" his penis and when V.R. objected, told her to "just do it." Tr. p. 206. Eventually, Morales "pushed [V.R.'s] head down onto [his penis] and . . . made [her] suck it." Tr. p. 206. In addition, at some point, Morales "put his mouth on [V.R.'s] vagina and started licking." Tr. p. 207.

On February 17, 2009, the State charged Morales with three counts of Class B felony sexual misconduct with a minor. At trial, V.R. testified that while she could remember the events that took place, she could not remember the exact timing sequence in which these events occurred because she was "blacking out." Tr. p. 207. V.R. further testified that although she had been drunk before, this time felt different because she "had never blacked out or not known what [she] was doing." Tr. p. 208. At the conclusion of trial, the jury found Morales guilty as charged. On April 27, 2010, the trial court sentenced Morales to three concurrent eighteen-year terms of incarceration.

*Morales v. State*, No. 82A04-1005-CR-311 (Ind. Ct. App. April 20, 2011), *trans. denied*.

[3]     After Morales' convictions and sentences were affirmed on appeal, he filed a motion for post-conviction placement in a county forensic diversion program. The trial court denied Morales' motion on the basis that the program would not

accept sex offenders. Morales filed a petition for judicial review of the program's acceptance criteria. The trial court denied Morales' petition. On appeal, we affirmed the trial court's denial of his petition. *Morales v. State*, 991 N.E.2d 619 (Ind. Ct. App. 2013), *aff'd on reh'g*, *Morales v. State*, 4 N.E.3d 668 (Ind. Ct. App. 2013).

[4] Morales filed a *pro se* petition for post-conviction relief on July 18, 2012. On August 9, 2012, the State filed its answer along with a motion to proceed by affidavit. The State's motion was granted on August 29, 2012, and the trial court ordered the parties to submit the case by affidavit. Morales requested and was granted permission to submit a supplement to his petition for post-conviction relief on January 29, 2013. Morales' petition for post-conviction relief was denied by the post-conviction court on April 23, 2014. Morales now appeals.

# Discussion and Decision

## Standard of Review

[5] Our Supreme Court has set forth the standard of review for post-conviction proceedings as follows:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Further, the post-conviction court in this

case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, '[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014) (most internal quotations and citations omitted).

# I.

[6] Morales contends that the post-conviction court erred by concluding that his claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution was waived. In particular, he argued that the enhancement of his offense from a Class C felony to a Class B felony based upon the fact that he was more than twenty-one years old when he committed the alleged offense, violated the state and federal constitutions. For reasons we explain below, we agree with the post-conviction court that his claim has been waived. Waiver notwithstanding, his claim fails because the issue has already been decided adversely to his contention.

[7] We note that in his brief, Morales acknowledges that this argument was not presented at trial or on direct appeal. "The post-conviction procedures do not provide a petitioner with a 'super-appeal' or opportunity to consider

freestanding claims that the original trial court committed error. Such claims are available only on direct appeal." *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

[8]     Even though no objection was made at trial, Morales could have argued the constitutionality of the statute on direct appeal. "Generally, a challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial, and the failure to do so waives the issue on appeal." *Donaldson v. State*, 904 N.E.2d 294, 298 (Ind. Ct. App. 2009) (quoting *Johnson v. State*, 879 N.E.2d 649, 654 (Ind. Ct. App. 2008)). However, some cases have considered the constitutionality of statutes even where the defendant failed to file a motion to dismiss prior to trial. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). The decision to consider the issue relies on cases holding that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court." *Id.* (quoting *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992)). Therefore, Morales could have raised this issue on direct appeal, but chose not to do so. Morales also does not raise this issue in the context of a claim of ineffective assistance of counsel or newly discovered evidence. Because the issue was available at trial and on direct appeal, the issue is waived for purposes of post-conviction proceedings, and the post-conviction court did not err.

[9] We note, additionally, that Morales' claimed error has been decided against him. In *Cowart v. State*, 756 N.E.2d 581, 586-87 (Ind. Ct. App. 2001), *trans. denied*, an appeal from child molesting convictions, we held that a more severe penalty could be based upon an age classification without offending either the state or federal constitution as long as the classification is rationally related to a legitimate state interest and it is applicable and equally available to all persons similarly situated. The post-conviction court did not err.

## II.

[10] Morales also presents several arguments alleging that he received ineffective assistance of trial counsel.[2] The standard of review for those claims has been set forth by the Supreme Court as follows:

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding

---

[2] Morales raised claims of ineffective assistance of appellate counsel in his petition for post-conviction relief. The post-conviction court did not grant Morales relief on those grounds. Morales' arguments on appeal address only his claims of ineffective assistance of trial counsel.

would have been different." *Id*. (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). "If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Id*. "Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *Id*.

[11] Morales claims that he received ineffective assistance of trial counsel because 1) counsel failed to object to the admission of the victim's underwear into evidence, 2) did not object to the introduction of DNA evidence, and 3) failed to present expert testimony to challenge the victim's claim that she suffered periodical "blackouts" the evening the crimes occurred. Regarding the admission of the victim's underwear, the post-conviction court concluded that trial counsel made a strategic decision not to make additional objections to that evidence, and that Morales' claim that there was an insufficient link between the underwear and the victim had more to do with the weight to be given the evidence than it did with its admissibility. Regarding the DNA evidence, the post-conviction court determined that the evidence was relevant to the charges and that trial counsel's decision not to object to the evidence was likely a strategic one because the DNA evidence did not establish a direct link to

Morales, thus leaving open an inference that Morales did not commit the offenses. Regarding the expert witness testimony, the post-conviction court concluded that since the victim was not old enough to consent to the sexual activity, a challenge to the victim's lucidity was irrelevant to the crime charged, thus trial counsel's performance was not deficient.

[12] Before we address the specific claims of error, we note that even had trial counsel succeeded in excluding the challenged evidence, the remaining evidence against Morales overwhelmingly supported the jury's verdict. Consequently, even if trial counsel's performance was found to be deficient in failing to make certain objections, Morales can establish no prejudice and his claims of ineffective assistance of counsel fail, nonetheless. The victim testified at trial that Morales inserted his finger into her vagina; he pushed her mouth onto his penis; and, he placed his mouth on her vagina and began licking it. The victim's testimony was corroborated by a video recording Morales made of the victim, who was intoxicated after being given alcohol by Morales, and spoke using risqué and suggestive language. Morales' voice can be heard on the video asking the victim inappropriate questions.

[13] Additionally, a short time after the crimes were committed, Morales sent two text messages in which he offered an apology to the victim, and informed his girlfriend, the victim's cousin, that he had done something while he was drunk that he could not live with. Morales admitted at trial that he had attempted to commit suicide by ingesting four boxes worth of Benadryl in combination with

alcohol. Therefore, even without the challenged evidence it is unlikely that the result of the trial would have been different.

[14] Turning now to the specific claims, Morales contends that the post-conviction court erred because the DNA evidence was inadmissible, citing *Deloney v. State*, 938 N.E.2d 724 (Ind. Ct. App. 2010), *trans. denied*, in support of his position. He argues that had trial counsel objected to the DNA evidence, the objection would have been sustained. Therefore, he argues that the post-conviction court erred by denying this claim of ineffective assistance of counsel.

[15] "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. 2011) (quoting *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007)). *Deloney* does hold that "DNA that does not constitute a match or is not accompanied by statistical data regarding the probability of a defendant's contribution to a mixed sample is not relevant, Evid. R. 402, and should not be admitted." 938 N.E.2d at 730. However, the DNA was relevant in the present case. A forensic DNA analyst testified at trial that although she found a small amount of male DNA in the cuttings from the victim's underwear, the amount was too small to obtain a DNA profile for the contributor. The fourteen-year-old victim testified that she had packed her own backpack for the overnight stay with a friend the night prior to the night she stayed with her cousin, and after the incident, that she packed her own bag to go to the hospital for an examination. There were no male friends with her on the night in question, meaning that Morales was the only male with her during

the relevant time period.  Trial counsel would not have been successful had he objected to the admissibility of the DNA evidence.

[16]  Similarly, trial counsel would not have been successful had he objected to the admission of the underwear.  Morales claims that there was an inadequate link between the underwear and the victim.  The victim testified that the morning after the crimes occurred she showered, changed her underwear, and put on the same clothes she had worn the day before.  She placed the previously worn underwear in her backpack.  The victim testified at trial that the underwear collected as evidence were the same underwear she had taken off the morning after the crimes occurred.  Therefore, trial counsel would not have been successful had he objected to the admission of the evidence on the ground of relevancy, and any challenge to the link between the victim and the underwear that was tested would be relevant to the weight of the evidence, not its admissibility.

[17]  Trial counsel's decision not to object to the DNA evidence and underwear evidence can be explained as a strategic decision.  Morales' trial counsel used that evidence to challenge the victim's credibility on cross-examination and during the closing argument.  On review, we "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).  The post-conviction court did not err in denying Morales relief.

[18] Morales also challenges trial counsel's decision not to call an expert to testify at trial to challenge the victim's testimony that she experienced blackouts on the night of the crimes. The victim had testified at trial that she was intoxicated that night and that she experienced blackouts periodically. Morales, however, also testified that he experienced blackouts on the night in question. We note that trial counsel cross-examined the victim on that claim. Had trial counsel called an expert to testify at trial to discredit the victim's claim, the expert's testimony might have worked to discredit Morales' similar claim of intoxication. The jury might have concluded that the victim remembered the perpetration of unwanted sexual acts on her, and that Morales feigned a loss of memory on those events he wanted to forget. Thus, trial counsel's decision involved one of strategy. "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess . . . although a failure to call a useful witness can constitute deficient performance. . . ." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). Here, because expert testimony might have served to discredit Morales' own testimony concerning his own blackouts, we cannot say that trial counsel erred by failing to call a useful witness. The post-conviction court did not err by denying Morales' claim of ineffective assistance of trial counsel on the basis of trial strategy.

## Conclusion

[19] In light of the foregoing, we affirm the post-conviction court's decision.

[20] Affirmed.

Vaidik, C.J., and Riley, J., concur.